IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUNIOR WASHINGTON, ) | |
| ) | Civil Action No. 22 – 1204 |
| Plaintiff, ) | |
| ) | |
| v. ) | District Judge David S. Cercone |
| ) | Magistrate Judge Lisa Pupo Lenihan |
| LYNN PATRONE, Department of ) | |
| Corrections Mental Health Advocate, ) | |
| and ROBERT D. GILMORE, ) | |
| Superintendent of SCI-Greene, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

For the following reasons, the Court will dismiss the Complaint (ECF No. 5) with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

A. **Background**

Plaintiff Jerome Junior Washington ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He initiated this prisoner civil rights action by the filing of a Motion for Leave to Proceed *in forma pauperis* (ECF No. 1), which was granted on August 30, 2022 (ECF No. 4). Plaintiff has sued Robert D. Gilmore, the former Superintendent of SCI-Greene, and Lynn Patrone, a DOC Mental Health Advocate. (ECF No. 5, ¶¶ 3-4.)

The following facts are alleged in Plaintiff's Complaint. Plaintiff was assigned to the Diversionary Treatment Unit ("DTU") at SCI-Greene, a Level-5 housing unit for inmates with serious mental illness or intellectual disability who present safety and/or security needs that

1

cannot be accommodated by less restrictive housing.[1]  Id., ¶¶ 5, 9.  Plaintiff was assigned a "D Roster" code, which is a DOC mental health rating that identifies him as having a serious mental illness.  Id., ¶ 7.  He has been diagnosed with schizoaffective disorder, post-traumatic stress disorder, visual and auditory hallucinations, suicidal ideation, attention deficit disorder, and bipolar I.  Id., ¶ 6.  He also says that he was diagnosed with an anti-social personality disorder.  Id.  Plaintiff states that he is being confined in a Level-5 housing unit "without any exceptional circumstances" after he has already completed his disciplinary conduct time.  Id., ¶ 10.

On an unknown date, Plaintiff wrote a letter to Defendant Patrone wherein he complained about Ms. Wright's interaction with him on May 16, 2019.[2]  Id., ¶ 11.  Plaintiff states that Ms. Wright is the DOC's Regional Manager and he met with her and Lt. Braunlich around 11:52 a.m. on that day.  Id.  Ms. Wright asked Plaintiff whether he had any assaults on any inmates or guards and Plaintiff answered that he did not.  Id.  However, Lt. Braunlich interrupted and told Ms. Wright that Plaintiff had attempted to piss and spit on officers.[3]  Id.  Plaintiff states that Ms. Wright "took the side of Lt. Braunlich" and agreed that he was a behavior problem.  She stated that she thought the SMU program would be "best" for Plaintiff, but Plaintiff disagreed that he was a behavior problem and stated that he had never tried to spit on any officers.  Id.  He also

---

[1] Plaintiff states that inmates on Level-5 housing units are either serving "disciplinary custody" time for misconducts or are in "administrative custody" for exceptional circumstances.  (ECF No. 5, ¶ 8.)

[2] Plaintiff has filed a separate case against Ms. Wright, specifically referencing his interaction with her on May 16, 2019.  See Washington v. Wright, et al., Civil Action No. 22-1201 (W.D. Pa.).  It is unclear what relevance, if any, the allegations in that case have to Plaintiff's claims in this case.

[3] The events that Plaintiff claims Lt. Braunlich was referring to occurred on July 13, 2017, and are the subject of Plaintiff's case filed at CA No. 17-988.

said that programs were at least 18 months long but that he only had disciplinary custody time until September 23, 2019.  Id.  In his letter to Defendant Patrone, Plaintiff also complained about "numerous issues regarding the lack of adequate mental health treatment" and "therapeutic outlets/stimuli" for mentally ill inmates in the DTU.  Id., ¶ 12.  For example, he complained that there were no social workers, counseling, books, and physical recreation available to the DTU inmates.  Id.  He also complained that the people who referred to themselves as psychologists and psychiatrists at SCI-Greene didn't actually have degrees in those fields and also that the corrections officers did not have appropriate training to handle prisoners with mental illness.  Id.  He also complained about misappropriation of government funding that is to go towards helping prisoners with mental illness.  Id.  Plaintiff states that he verbally complained of all of these issues on numerous occasions but that no one made a record of his complaints.  Id.  He also states that he filed grievances about these issues.  Id.

      On June 25, 2019, Plaintiff received a response to his letter from Defendant Patrone.  Id.  In her response she stated that there was no record of Plaintiff making the aforementioned complaints and that there was no indication that the psychologists and psychiatrists at SCI-Greene were falsifying records about their degrees.  Id.  Plaintiff asserts that Defendant Patrone's response to his letter proves that she is aware of the lack of adequate mental health care and treatment for mentally ill prisoners, as well as the conditions they face in the DTU, but she is nevertheless deliberately indifferent to all of it.  Id., ¶¶ 12, 14-15.  He also claims that in order to save the state money, mentally ill prisoners are treated differently than mentally ill non-incarcerated individuals.  Id., ¶ 19.  For example, he complains that the mental health professionals do not provide their patients in prison with the same quality of care.  Id.  Plaintiff seeks compensatory, punitive, declaratory and injunctive relief in the form of better mental

health care, training of officers, and real psychologists and psychiatrists who make daily rounds on mental health units and give their patients treatment equal to that received by non-incarcerated individuals.  Id., ¶¶ 16-19.

The Court notes that Plaintiff was transferred out of SCI-Greene and into the Behavioral Management Unit ("BMU") at SCI-Rockview on June 29, 2020.  See Washington v. Wright, et al., Civil Action No. 22-1201, ECF No. 4, ¶ 33 (W.D. Pa.); Washington v. Kennedy, et al., Civil Action No. 22-1203, ECF No. 4, ¶¶ 7, 22 (W.D. Pa.); see also Washington v. Wetzel, et al., Civil Action No. 18-1390, ECF No. 120-1, p.5 (W.D. Pa.).

For the following reasons, the Court will dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted.

B. **Standard of Review**

When a plaintiff has requested leave to proceed *in forma pauperis*, district courts must review his allegations in accordance with 28 U.S.C. § 1915(e).  Section 1915(e)(2) requires federal courts to review complaints filed *in forma pauperis* and to dismiss, at any time, any action that: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[4]

When determining whether an action has failed to state a claim for purposes of § 1915(e)(2)(B)(ii), the Court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  D'Agostino v. CECOM RDEC, 436 F. App'x 70, 72 (3d Cir. 2011).  That means that the Court must dismiss a complaint if it does not allege "enough

---

[4] Dismissal under § 1915(e)(2) is "often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In reviewing a plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff. Twombly, 550 U.S. at 555-56; *see also* Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above a speculative level[.]" Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *See* Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v.

Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

    C. Discussion

        1. **Statute of Limitations**

Congress has not established a time limitation for a § 1983 cause of action.  Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in* Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. 2009).  The United States Supreme Court has indicated, however, that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action.  Wilson, 471 U.S. at 278.  In Pennsylvania, the statute of limitations for tort actions is two years.  42 Pa. Con. Stat. Ann. § 5524.  Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years.  *See* Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run.  *See* Wallace v. Kato, 549 U.S. 384, 388 (2007).  Under federal law, "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998) (quoting Genty v. Resolution Trust Corp., 937 F.2d

899, 919 (3d Cir. 1991)). "The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace, 549 U.S. at 391 (citations omitted).

"When screening a complaint under § 1915, a district court may sua sponte dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." Whitenight v. Commonwealth of Pennsylvania State Police, 674 F. App'x 142, 144 (3d Cir. 2017) (citing cases); *see also* Smith v. Delaware County Court, 260 F. App'x 454, 455 (3d Cir. 2008).

Here, affording Plaintiff the most liberal construction of his *pro se* Complaint, his claims appear to be time barred. Although Plaintiff does not articulate when the specific incidents giving rise to his claims occurred, the latest they could have occurred would be prior to his transfer to SCI-Rockview on June 29, 2020. However, Plaintiff did not file his Complaint in this case until August 11, 2022, over two years later. As such, the Complaint appears to have been untimely filed beyond the applicable statute of limitations and should therefore be dismissed for Plaintiff's failure to state a claim upon which relief may be granted.[5] *See* Jones v. Bock, 549 U.S. 199, 215 (2007) (If the allegations, taken as true, show that relief is barred by the applicable statute of limitations then a complaint is subject to dismissal for failure to state a claim).

   2. **Personal Involvement**

---

[5] The Court recognizes that the statute of limitations is tolled during the time inmates exhaust their administrative remedies, Pearson v. Secretary Department of Corrections, 775 F.3d 598 (3d Cir. 2015), and that courts "may not *sua sponte* dismiss a prisoner's § 1983 action on the basis of the statute of limitations unless it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard[,]" Vasquez Arroyo v. Starks, 589 F.3d 1091, 1097 (3d Cir. 2009) (citing Abbas v. Lt. Dixon, 480 F.3d 636, 640 (2d Cir. 2007)). Plaintiff alleges that he did exhaust his administrative remedies for the claims he raises in his Complaint. (ECF No. 5, ¶¶ 20-22.) Although it appears from the face of Plaintiff's Complaint that there are no meritorious tolling issues for the majority, if not all, of the relevant time period at issue, the Court will proceed to address alternative bases for dismissal.

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See*, *e.g.*, Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-established that, in the Third Circuit, personal involvement of defendants in alleged constitutional deprivations is a requirement in a section 1983 case and that a complaint must allege such personal involvement. *See* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the court stated in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. (citations omitted). Courts routinely hold that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability.

Plaintiff has failed to allege the personal involvement of Defendant Gilmore. With respect to Defendant Gilmore, Plaintiff alleges only that he is the Superintendent at SCI-Greene, and as such he is responsible for the overall operation of SCI-Greene. (ECF No. 5, ¶ 4.) However, he does not allege that Defendant Gilmore directed or participated in any of the alleged wrongdoing that forms the basis of his claims. In fact, Defendant Gilmore's name appears only in the caption and the defendant-identification section of Plaintiff's Complaint. Because it is quite clear that Plaintiff seeks to hold Defendant Gilmore liable based solely on the operation of *respondeat superior*, he has failed to state a claim against him.

### 3. Deliberate Indifference

Plaintiff asserts a violation of the Eighth Amendment particularly as it relates to how Defendant Patrone treated him and other inmates with mental illness in the DTU at SCI-Greene.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In a situation in which a prisoner alleges deliberate indifference to a medical need, a plaintiff must plead (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

With respect to the first prong, a medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987).

With respect to the second prong, deliberate indifference is properly pleaded by factual allegations supporting the conclusion that the official knew of and disregarded an excessive risk to inmate safety. Farmer, 511 U.S. at 837. The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must also "draw the inference." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The Third Circuit has held that this standard is met in several scenarios, including "when a doctor is

9

intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal quotation marks and citations omitted). This standard is also met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." Rouse v. Plaintier, 182 F.3d 192, 197 (3d Cir. 1999).

      While Plaintiff may have adequately alleged a medical need in the form of serious mental illness, he has failed to plead sufficiently that Defendant Patrone knew of and deliberately disregarded an excessive risk to his serious mental illness. It appears that Plaintiff is attempting to demonstrate Defendant Patrone's personal involvement in the alleged wrongs asserted in his Complaint through allegations of knowledge and acquiescence, specifically via the letter he wrote to her sometime after May 16, 2019, and her response to it on June 25, 2019. He states that her lack of action to the various issues of which he complained meant that she condoned them and that this demonstrates her deliberate indifference to his serious mental illness. The problem with Plaintiff's argument is that while he complained to her about the general lack of adequate mental health treatment and therapeutic outlets/stimuli for mentally ill prisoners in the DTU at SCI-Greene, as well as what he thought to be the alleged misappropriation of federal funds, and possible violations of DOC policies, there are no allegations that she had knowledge of and acquiesced in any specific misconduct that resulted in an excessive risk of harm to Plaintiff's health or safety. For example, there are no pleaded facts to suggest that Plaintiff was denied treatment for his mental illness or any other medical need of which she was aware and deliberately disregarded. While the conditions Plaintiff faced in the DTU, including the care provided by the medical professionals, and specifically the lack of what he calls "therapeutic

outlets/stimuli," may have all had an impact on his mental health, that is not the standard by which to evaluate a deliberate indifference claim. At best, Plaintiff has alleged that Defendant Patrone had knowledge of what he believed were inadequacies in the DTU as it pertained to the treatment and confinement conditions of mentally ill prisoners, none of which Plaintiff stated resulted in a substantial risk of harm to his mental health, and that Defendant Patrone disagreed with his assessment of those inadequacies in her response to his letter. This is insufficient to state a plausible Eighth Amendment claim.

    **4. Equal Protection**

Plaintiff alleges a violation of the Equal Protection Clause. Put simply, the Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). The Supreme Court has explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statue or by its improper execution through duly constitutional agents.'" Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923) (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)). "The Equal Protection Clause does not forbid classifications." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). But the distinctions between classes "must be rationally related to a legitimate governmental purpose." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446 (1985).

To state an equal protection claim, a plaintiff must plead sufficient facts to conclude that the defendant has treated him differently from a similarly situated party and that the defendant's explanation for the differing treatment does not satisfy the relevant level of scrutiny. Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs., 867 F.3d 338, 348 (3d Cir. 2017)

(citing City of Cleburne, 473 U.S. at 439-40). The failure to identify similarly situated persons dooms an equal-protection claim. See Hill v. Borough v. Kutzdown, 455 F.3d 225, 239 (3d Cir. 2006) (citing Levenstein v. Salafsky, 414 F.3d 767, 776 (7th Cir. 2005)) (stating equal-protection claim "must fail because [plaintiff] does not allege the existence of similarly situated individuals").

Plaintiff claims that mentally ill individuals in prison are treated differently than mentally ill individuals not in prison. Specifically, he appears to state that to save money, the DOC does not employ qualified mental health professionals nor do they provide mentally ill inmates with the same quality treatment that they would receive if they were not in prison. While it is not clear whether this claim is directed at Defendant Patrone or Gilmore, and what authority they might have in the hiring and treatment decisions of mental health professionals at SCI-Greene, what is clear is that prisoners are not similarly situated to non-prisoners for purposes of an equal protection claim, see Murray v. Dosal, 150 F.3d 814, 818 (8th Cir. 1998), especially when it comes to cost considerations that figure into medical care decisions. See Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) (prisoners are not guaranteed "the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.") Because Plaintiff does not identify any other similarly situated inmates who were treated differently, he has failed to state an equal protection claim.

**D. Amendment**

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002). Based on his current allegations, the Court cannot perceive additional facts that Plaintiff

12

could plead that would overcome the deficiencies in his Complaint, particularly because it appears that the Complaint was untimely filed. Accordingly, the Court will not grant Plaintiff leave to amend. A separate Order will issue.

Dated: December 4, 2023

s/David Stewart Cercone  
David Stewart Cercone  
Senior United States District Judge

cc:   Jerome Junior Washington  
      HV0282  
      SCI Forest  
      P.O. Box 945  
      286 Woodland Drive  
      Marienville, PA  16239